IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA and
STATE OF CALIFORNIA ex rel. LOI
TRINH and ED TA-CHIANG HSU,

                    Plaintiffs,

     v.

NORTHEAST MEDICAL SERVICES, INC.,

                    Defendant.
_____/

No. C 10-1904 CW

ORDER DENYING
MOTION TO DISMISS
(Docket No. 35)

     Plaintiffs United States of America and the State of
California bring this action against Defendant Northeast Medical
Services (NEMS) for violations of the federal False Claims Act
(FCA), 31 U.S.C. §§ 3729 et seq., and the California False Claims
Act (CFCA), Cal. Gov't Code §§ 12650 et seq., and for various
torts.  NEMS moves to dismiss for lack of subject matter
jurisdiction and failure to state a claim.  Plaintiffs oppose the
motion.  After considering the parties' submissions and oral
argument, the Court denies the motion.

                            BACKGROUND

     NEMS is a non-profit health center that provides medical care
to low-income communities throughout the San Francisco Bay Area.
For the past four decades, NEMS has received federal funding for
this work under § 330 of the Public Health Services Act.  42
U.S.C. § 254b.  Under that provision, NEMS is required to provide
medical services to communities with limited health care access
and must not refuse services to any person based on that person's
inability to pay.  42 U.S.C. § 254b(a)(1).  As a further condition

of its funding, NEMS must provide services to any person enrolled in Medicaid.  42 U.S.C. § 254b(k)(3).

Medicaid is a federal program that offers participating states financial assistance to provide medical services to the poor.  Cal. Welf. & Inst. Code § 10740.  While states "do not have to participate in Medicaid, . . . those that choose to do so 'must comply both with statutory requirements imposed by the Medicaid Act and with regulations promulgated by the Secretary of [HHS].'" Managed Pharmacy Care v. Sebelius, 705 F.3d 934, 939 (9th Cir. 2012) (citations omitted).  One of these requirements is that participating states reimburse "Federally-qualified health centers" (FQHCs), like NEMS, for the services they provide to Medicaid enrollees.  42 U.S.C. § 1396a(a)(15).  Thus, FQHCs typically receive funding from both the federal government (under the Public Health Services Act for services they provide to the poor) and the State (under the Medicaid Act for services they provide to Medicaid enrollees).

California participates in Medicaid through its Medi-Cal program.  Cal. Welf. & Inst. Code § 10740.  It is therefore required to reimburse NEMS for the organization's costs in providing care to Medicaid enrollees.  42 U.S.C. § 1396a(bb).  It provides these reimbursements through a "managed care organization" called the San Francisco Health Plan (SFHP), with which the State has contracted to help administer Medi-Cal in the San Francisco area.  SFHP provides NEMS with regular payments that are meant to estimate NEMS's prospective costs for treating Medicaid enrollees for the upcoming fiscal year.  At the end of every fiscal year, NEMS is required to report its actual costs to

**United States District Court**
For the Northern District of California

the Department of Health Care Services (DHCS), the agency tasked
with administering Medi-Cal, so that the agency can determine
whether the SFHP's prospective payments fully compensated NEMS for
its Medicaid-related costs that year. 42 U.S.C. § 1396a(bb)(5).
If the report reveals that SFHP's prospective payments exceeded
NEMS's actual Medicaid costs for the year, then NEMS must return
any excess funding it received to DHCS. If the report shows that
SFHP's payments fell short of NEMS's actual costs for the year,
then DHCS must make up the shortfall by paying NEMS the
difference. This process, which the Medicaid Act requires all
FQHCs to complete, is known as the annual "reconciliation."

In the present case, the state and federal governments allege
that NEMS knowingly underreported the amount of funding it
received from SFHP on the reconciliation reports it submitted to
DHCS between 2001 and 2010. Docket No. 26, Complaint-in-
Intervention ¶ 2. As a result, the governments claim, "NEMS
received inflated year-end payments from Medi-Cal." Id.

Two former NEMS employees, Loi Trinh and Ed Ta-Chiang Hsu,
initiated this action in May 2010 by filing a qui tam suit on
behalf of the governments after they learned of the potential
misreporting. Id. ¶¶ 36-37. After investigating Hsu and Trinh's
allegations, the federal government elected to intervene in August
2012, Docket No. 17, and the State followed suit in January 2013,
Docket No. 24. Two weeks later, on January 15, 2013, the
governments filed their joint complaint-in-intervention, alleging
violations of the FCA and CFCA and asserting claims for unjust
enrichment, fraud, concealment of material facts, intentional
misrepresentation, and negligent misrepresentation. Compl.-in-

Interv. ¶¶ 38-77.  Their complaint charges NEMS with extracting

millions of dollars in inflated reconciliation payments from Medi-

Cal.  Id. ¶¶ 31-33.

LEGAL STANDARD

I.    Subject Matter Jurisdiction

Subject matter jurisdiction is a threshold issue which goes

to the power of the court to hear the case.  Federal subject

matter jurisdiction must exist at the time the action is

commenced.  Morongo Band of Mission Indians v. Cal. State Bd. of

Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988).  A federal

court is presumed to lack subject matter jurisdiction until the

contrary affirmatively appears.  Stock W., Inc. v. Confederated

Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

Dismissal is appropriate under Rule 12(b)(1) when the

district court lacks subject matter jurisdiction over the claim.

Fed. R. Civ. P. 12(b)(1).  A Rule 12(b)(1) motion may either

attack the sufficiency of the pleadings to establish federal

jurisdiction, or allege an actual lack of jurisdiction which

exists despite the formal sufficiency of the complaint.  Thornhill

Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th

Cir. 1979); Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir.

1987).

II.   Failure to State a Claim

A complaint must contain a "short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R.

Civ. P. 8(a).  On a motion under Rule 12(b)(6) for failure to

state a claim, dismissal is appropriate only when the complaint

does not give the defendant fair notice of a legally cognizable

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

claim and the grounds on which it rests.  <u>Bell Atl. Corp. v.</u>
<u>Twombly</u>, 550 U.S. 544, 555 (2007).  In considering whether the
complaint is sufficient to state a claim, the court will take all
material allegations as true and construe them in the light most
favorable to the plaintiff.  <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d
896, 898 (9th Cir. 1986).  However, this principle is inapplicable
to legal conclusions; "threadbare recitals of the elements of a
cause of action, supported by mere conclusory statements," are not
taken as true.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)
(citing <u>Twombly</u>, 550 U.S. at 555).

DISCUSSION

NEMS asserts four grounds for dismissing the governments'
complaint-in-intervention.[1]  First, it contends that it is a
"federal agency or instrumentality" and therefore is entitled to
sovereign immunity.  Second, NEMS argues that the suit is barred
by the government action rule.  Third, it asserts that the federal
government's FCA claims are not timely.  Finally, NEMS maintains
that the governments' claims are not cognizable because they are
based on a mistaken interpretation of the Medicaid Act.  For
reasons explained more fully below, none of these arguments is
persuasive.

I.   Subject Matter Jurisdiction

A.   Sovereign Immunity

NEMS argues that it enjoys sovereign immunity because it is
"a federal agency or instrumentality . . . in possession of only
federal funds."  Docket No. 35, Mot. Dismiss 17.  Specifically, it

---

[1] NEMS has not moved to dismiss the relators' complaint here.

United States District Court
For the Northern District of California

asserts that "its special status as a Section 330 grantee and federal designation as a [FQHC]" renders it immune from qui tam suits by the state and federal governments.  Id. at 19.

The only other federal court to address whether § 330 grantees enjoy sovereign immunity expressly concluded that they do not.  In Nieves v. Community Choice Health Plan of Westchester, Inc., a court in the Southern District of New York explained that the receipt of federal funds and the obligation to comply with federal regulations does not endow a § 330 health center with sovereign immunity.  2011 WL 5533328, at *10 (S.D.N.Y.) ("'Neither federal regulation nor federal funding, even extensive or exclusive federal funding, is sufficient' to transform an entity into an agency or instrumentality of the United States." (quoting Kuntz v. Lamar Corp., 385 F.3d 1177, 1184 (9th Cir. 2004))).[2]

The Nieves court relied heavily on United States v. Orleans, 425 U.S. 807, 816-18 (1976), which similarly cautioned against granting sovereign immunity to non-profit entities that receive substantial federal funding.  In Orleans, the Supreme Court held that the defendant -- a non-profit community organization that received funding under the Economic Opportunity Act (EOA) -- could not invoke federal sovereign immunity as a defense even though it

_____

[2] NEMS argues that Nieves is inapposite because the defendant in that case never explicitly invoked federal sovereign immunity as a defense.  This is not a legitimate reason for ignoring the Nieves court's reasoning and, even if it was, it overlooks the fact that the Nieves defendant -- while being represented by NEMS's counsel -- subsequently raised sovereign immunity as a defense in another case where the argument was again rejected.  See Veneruso v. Mount Vernon Neighborhood Health Ctr., 2013 WL 1187445, at *15 n.9 (S.D.N.Y.) ("Mount Vernon's assertion of sovereign status has already been rejected in this district, albeit in a different context." (citing Nieves, 2011 WL 5533328, at *10)).

"received all of its monetary resources" from the federal government.  Id. at 810.  The Court reasoned that "[f]ederal funding reaches myriad areas of activity of local and state governments and activities in the private sector as well.  It is inconceivable that Congress intended to have waiver of sovereign immunity follow congressional largesse and cover countless unidentifiable classes of 'beneficiaries.'"  Id. at 816.  The Court further explained that, even though the EOA required the defendant to "comply with extensive regulations which include . . . accounting and inspection procedures, expenditure limitations, and programmatic limitations and application procedures," these regulatory obligations did not transform the defendant into a federal instrumentality.  Id. at 812, 817-18 (reasoning that the EOA regulations were "not concerned with the details of the day-to-day operations" of the organization).

The same logic governs here.  Although NEMS receives considerable federal funding and must comply with an extensive regulatory regime, it still maintains independent control over its own day-to-day activities.  Indeed, just as in Orleans, federal law requires NEMS's board to be controlled by members of the local community -- a clear marker of its independence.  42 U.S.C. § 254b(k)(3)(H); see also Orleans, 425 U.S. at 817 ("Further support for our conclusion that a community action agency is not a federal agency is the fact that the Economic Opportunity Act provides that a community action agency is to be administered by a Community action board composed of Local officials, representatives of the poor and members of business, labor, and other groups in the community.").

7

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

NEMS's reliance on <u>Wood ex rel. United States v. American Institute of Taiwan</u>, 286 F.3d 526 (D.C. Cir. 2002), and <u>Galvan v. Federal Prison Industries</u>, 199 F.3d 461 (D.C. Cir. 1999) -- neither of which was decided in this circuit -- is misplaced.  In <u>Wood</u>, the D.C. Circuit held that the American Institute in Taiwan, a non-profit organization functioning as the United States' <u>de facto</u> embassy in Taiwan, enjoyed sovereign immunity because it effectively carried out American foreign policy on behalf of the federal government.  286 F.3d at 530-33.  Similarly, in <u>Galvan</u>, the court found that a "wholly owned government corporation" tasked with administering vocational programs in federal prisons was immune from suit because "all money under [its] control [was] held by the U.S. Treasury."  199 F.3d at 464.  NEMS, in contrast, does not carry out federal policy and maintains control of its own funds.  In short, NEMS does not resemble either of the unique corporate entities that the D.C. Circuit has held enjoy federal sovereign immunity.[3]

B.   Government Action Rule

The FCA imposes civil liability on anyone who presents the federal government with "a false or fraudulent claim for payment or approval."  31 U.S.C. § 3729(a); <u>Alderson v. United States</u>, 686 F.3d 791, 794 (9th Cir. 2012).  The statute permits private citizens to initiate suits on the government's behalf if they learn of a potential FCA violation.  31 U.S.C. §§ 3730(a)-(b)(1).

---

[3] At the hearing, the federal government argued that the Ninth Circuit implicitly rejected NEMS's federal sovereign immunity argument in its recent decision in <u>North East Med. Svcs. v. Cal. Dep't Health Care Svcs.</u>, 2013 WL 1339126, *5 & n.3 (9th Cir.).  That decision addresses Eleventh Amendment immunity and does not provide any clear guidance as to how the Ninth Circuit would decide this issue.

As an incentive for exposing such violations, these private citizens, typically called "relators," are allowed to recover a share of the judgment if the suit is ultimately successful.  Id. § 3730(d).

To prevent private citizens from abusing this incentive system, the statute bars relators from filing copycat lawsuits against a suspected FCA violator who is already the defendant in a pending FCA action by the government.  Title 31 U.S.C. § 3730(e)(3) provides: "In no event may a person bring [an FCA action] which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party."  Id. § 3730(e)(3).  This provision, known as the government action rule, creates a jurisdictional bar to any claims asserted in a prior FCA action in which the government has already intervened.  The bar is "intended to prevent parasitic qui tam lawsuits that receive support from an earlier case without giving the government any useful return, other than the potential for additional monetary recovery."  United States ex rel. Batty v. Amerigroup Illinois, Inc., 528 F. Supp. 2d 861, 876 (N.D. Ill. 2007).

NEMS contends that the government action rule precludes the federal government's FCA claims here.  It argues that the government previously asserted these claims in an earlier FCA lawsuit, United States ex rel. Stahlhut v. Northeast Med. Servs., Inc., Case No. 08-1307 EDL (N.D. Cal.), which the parties settled in June 2008.  Because the government action rule only bars claims by private parties -- not the federal government -- this argument is unavailing.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

As noted above, the whole purpose of the government action rule is to prevent abuses of the FCA's incentive system, which only applies to relators.  It was never meant to apply to the government because the government does not stand to benefit from filing or intervening in redundant FCA suits.  Indeed, if the provision were applied to the federal government, it would serve merely the same function as existing doctrines of preclusion such as res judicata and collateral estoppel.

In any event, even if the government action rule were applicable here, NEMS has not produced any evidence to show that the government's FCA claims in this action are actually the same as its claims in the prior FCA action.  Most notably, it has failed to provide a copy of the parties' 2008 settlement agreement.  Because that agreement was never filed in the 2008 case and was not included in NEMS's request for judicial notice,[4] the Court cannot determine whether the FCA claims in this action are "based upon allegations or transactions which are the subject of [the prior] civil suit."  See 31 U.S.C. § 3730(e)(3).  If the government's FCA claims or allegations in this suit are, in fact, identical to the claims it settled in 2008, then NEMS may move for summary judgment on these claims under one of the doctrines of preclusion identified above.

II.  Failure to State a Claim

   A.   Statute of Limitations

The FCA's statute of limitations prohibits any qui tam action from being brought

---

[4] Because NEMS failed to submit any documents from the 2008 case, the Court examined the docket in that case independently.

> more than 3 years after the date when facts
> material to the right of action are known or
> reasonably should have been known by the official
> of the United States charged with responsibility to
> act in the circumstances, but in no event more than
> 10 years after the date on which the violation is
> committed.

31 U.S.C. § 3731(b).  "[B]ecause the statute of limitations is an affirmative defense, the defendant bears the burden of proving that the plaintiff filed beyond the limitations period."  Payan v. Aramark Mgmt. Servs. LP, 495 F.3d 1119, 1122 (9th Cir. 2007).

NEMS contends that the government's FCA claims here are time-barred because the "state and federal governments first knew or reasonably should have known the facts material to this action" in March 2006, when a former NEMS employee filed a CFCA action against NEMS in state court.  Mot. 23.  The relator in that action, NEMS's former chief financial officer, Si Lan Stahlhut, alleged that NEMS had failed to report properly all of the payments that it received from SFHP between 2001 and 2004.  State of California ex rel. Stahlhut v. Northeast Med. Servs., Inc., Case No. CGH-06-450352, Compl. ¶¶ 41-46 (S.F. Sup. Ct.).  NEMS contends that, because it disclosed its contract with SFHP during that litigation -- including the per-visit payment rates it received from SFHP -- the governments should have been aware of its misreporting in 2006, four years before this suit was filed.

This argument fails for several reasons.  First, NEMS has not produced any evidence to show that it turned over the SFHP contract -- or any other relevant information -- to the State in

2006.[5]  Its request for judicial notice includes a copy of the State's subpoena but does not include NEMS's response to that subpoena.  Although NEMS provides a copy of the SFHP contract in its request for judicial notice, it does not provide any sworn evidence showing when -- or if -- it actually shared this information with the State.

NEMS also fails to explain adequately why its disclosure of the SFHP contract to the <u>state</u> government would have triggered the three-year limitations period to start running against the <u>federal</u> government.  Although NEMS contends that the State's knowledge of NEMS's misreporting "must be imputed to the federal government," Mot. 24, it has not provided any authority for that assertion.

Third, even assuming that NEMS's disclosure of the SFHP contract to the State could somehow be imputed to the federal government, NEMS still has not explained how the SFHP contract, standing alone, would apprise the government of NEMS's reporting failures.  To determine how much money NEMS received from SFHP, the government would need to know not only the per-visit payment rates disclosed in the contract, but also the number of patients NEMS treated under the contract.  The per-visit payment rates, without more, would not have provided the governments with sufficient information to determine the amount of money SFHP actually provided to NEMS.  Indeed, if the State knew exactly how much money SFHP provided NEMS every year -- as NEMS contends -- then the annual reconciliation process would have been

---

[5] NEMS also failed to produce the complaint from the 2006 litigation.  The Court was able to obtain the document from the San Francisco County Superior Court's website.

superfluous.  Because NEMS has not shown that this was the case, it has not met its burden of establishing that the FCA claims in this suit are time-barred.[6]

    B.   FQHC Reporting Requirements under the Medicaid Act

    NEMS contends that it is not required to report the full amount of payments it receives from SFHP on its reconciliation reports.  Its position is based on the provision of the Medicaid Act describing the reconciliation process, 42 U.S.C. § 1396a(bb)(5), which provides:

> In the case of services furnished by a Federally-qualified health center or rural health clinic pursuant to a contract between the center or clinic and a managed care entity [], the State plan shall provide for payment to the center or clinic by the State of a supplemental payment equal to the amount (if any) by which the amount determined under paragraphs (2), (3), and (4) of this subsection exceeds the amount of the payments provided under the contract.

NEMS highlights the phrase "services furnished by a Federally-qualified health center" to argue that it is only required to report a portion of the SFHP funding to DHCS: specifically, the portion of SFHP funding that it receives for FQHC services.  As NEMS reads the Medicaid Act, it need not report any funding it receives from SFHP for other services.

    This argument is insufficient to justify dismissal of the government's FCA claims here.[7]  The Ninth Circuit has held that,

---

[6] Even if NEMS had established that the government's FCA claims regarding NEMS's pre-2006 reporting practices are time-barred, the government's FCA claims based on post-2006 reporting practices would still survive.  As noted above, the government's FCA claims in this suit are based on allegations that NEMS consistently underreported its SFHP receipts between 2001 and 2010.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

because the FCA does not expressly define the word "false," courts must decide "whether a claim is false or fraudulent by determining whether a defendant's representations are accurate in light of applicable law."  United States v. Bourseau, 531 F.3d 1159, 1164 (9th Cir. 2008) (citing United States ex rel. Oliver v. Parsons Co., 195 F.3d 457, 463 (9th Cir. 1999)).  In Bourseau, the court specifically recognized that healthcare providers can be held liable under the FCA for submitting false cost reports to insurance companies in order to recoup inflated Medicare reimbursements.  531 F.3d at 1164.  Because the federal government alleges that NEMS engaged in a similar scheme to recoup inflated Medicaid reimbursements, it has stated a valid claim under the FCA.

According to the complaint-in-intervention, DHCS specifically instructs FQHCs to "[r]eport all Medi-Cal Managed Care Plan payments" on their reconciliation reports.  Compl.-in-Interv. ¶ 21 (quotation marks omitted; emphasis in original).  The complaint alleges that NEMS ignored this explicit instruction by consistently underreporting the amount of funding it received from SFHP.  Thus, even if NEMS's reading of the Medicaid Act is correct, the governments have stated plausible claims under the FCA and CFCA by alleging that NEMS made false statements on its reconciliation reports.  NEMS does not respond to this specific allegation in its motion nor does it explain how its

---

⁷ NEMS does not expressly state whether it is moving to dismiss both the CFCA and the FCA claims for failure to state a claim.  In its reply brief, however, it appears to focus on the pleading standard for FCA claims.  Reply 1.  Accordingly, the Court assumes that this section of NEMS's motion is directed only at the FCA claims and not at the CFCA claims in the governments' complaint.

interpretation of the Medicaid Act would excuse its failure to comply with the explicit reporting requirements of California's federally approved Medi-Cal plan.

CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss (Docket No. 35) is DENIED.  Defendant must file its answer by May 9, 2013 unless it seeks and obtains a stay pending its appeal of this order.

IT IS SO ORDERED.

Dated:   4/26/2013

CLAUDIA WILKEN
United States District Judge