UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NORTH EAST MEDICAL SERVICES,<br><br>Defendant. | Case No. 10-cv-01904-CW   (JCS)<br><br>**ORDER GRANTING MOTION TO STRIKE SUPPLEMENTAL DOCUMENT PRODUCTION AND EXPERT REPORT**<br><br>Re: Dkt. No. 176 |

## I.   INTRODUCTION

This case originated as a qui tam action against Defendant North East Medical Services ("NEMS") under the federal False Claims Act ("FCA") and the California False Claims Act ("CFCA"). Plaintiffs, the United States of America and the State of California (the "Governments"), allege that NEMS failed to report properly all reimbursements that it received for providing healthcare services, thus allowing NEMS to claim reconciliation payments from the Governments that it was not entitled to recover. Although fact discovery closed on December 3, 2013, NEMS first disclosed tens of thousands of documents in September of 2014. NEMS claims that these documents show that it was justified in not reporting certain reimbursements. The Governments move to strike as untimely NEMS's supplemental production and a supplemental expert report that relies on the documents at issue.

The Motion was taken under submission on November 3, 2014. Dkt. 182. It has since been referred for decision (dkt. 194), and the undersigned agrees that the Motion is appropriate for decision without oral argument. *See* Civ. L.R. 7-1(b). For the reasons stated below, the Governments' Motion to Strike is GRANTED.

## II.   BACKGROUND

The factual and procedural background of this case and related cases is summarized in

greater detail in Chief Judge Wilken's May 13, 2014 order regarding the parties' cross motions for summary judgment ("SJ Order," dkt. 147).[1] The following summary briefly addresses the background relevant to the present motion.

### A. Case Overview and Substantive Arguments

Relators Loi Trinh and Ed Ta-Chiang Hsu filed a qui tam action against NEMS in May of 2010 under the FCA and CFCA. The Governments elected to intervene in 2012, and filed their operative Amended Complaint-in-Intervention in January of 2013 ("Compl.," dkt. 26). The allegations at issue in the present motion relate to Medicaid reimbursement.

The Medicaid program offers federal funding to states that provide healthcare to the poor within a framework set by federal statute and regulation.[2] SJ Order at 3−4. Organizations like NEMS that receive Medicaid funding are known as "federally-qualified health centers," or FQHCs. *Id.* at 3. California distributes Medicaid funds through a program overseen by the California Department of Healthcare Services ("DHCS") working in conjunction with regional managed care organizations ("MCOs"). *Id.* at 4. MCOs receive governmental funding, and contract with FQHCs to distribute funds as reimbursement for the services that FQHCs provide to qualifying patients. *Id.* at 4−5. To the extent that MCOs fail to fully reimburse FQHCs for the cost of services provided, FQHCs may submit requests to DHCS for so-called "wraparound payments" based on the estimated difference between the FQHCs' actual costs and the payment they initially received. *Id.* at 5. DHCS also provides a "reconciliation" process each fiscal year, through which FQHCs may receive additional reimbursement if they demonstrate that the wraparound payments underestimated what they were owed. *Id.* at 5−6. The reconciliation process employs a "facility-specific per-visit reimbursement rate" to determine the facility's actual costs. *Id.* at 6. The Governments' expert states, and NEMS does not appear to dispute, that this reimbursement rate is based on the facility's cost data reported from either the average of 1999 and 2000 or from 2000 standing alone. Rosenstein Report (dkts. 158-1, 158-2) at 5−6.

---

[1] *United States ex rel. Trinh v. Ne. Med. Servs., Inc.*, No. C 10-1904 CW, 2014 WL 1992651 (N.D. Cal. May 13, 2014).
[2] California's Medicaid program is widely referred to as "Medi-Cal."

2

The Governments' theory of this case is that NEMS improperly failed to report large portions of the payment it received from the San Francisco Health Plan ("SFHP"), an MCO, and therefore improperly claimed and received approximately twenty million dollars through reconciliation from 2001 through 2010. SJ Order at 7. According to the Government, NEMS recorded its full reimbursements on an accounting ledger for a division it called "NEMS Medical Group/Management Services Organization" ("NEMS MSO"), transferred a portion of those reimbursements to the "NEMS Clinic" ledger, and failed to report the portion that remained on the NEMS MSO ledger in its annual reconciliation reports. See Compl. ¶¶ 27−29. NEMS does not dispute that it did not report all of the payments it received, but argues that it was not required to do so because the unreported payments were for "specialty" services outside the scope of Medicaid, and because payment for such services was distributed to third-party providers through NEMS MSO and thus not retained by NEMS. SJ Order at 16−17; NEMS's Opp'n to SJ (dkt. 114) at 17−18.[3]

At summary judgment, the Governments argued that even if NEMS was excluding only "specialty" services from its reported receipts, its reconciliation claims would still be inflated because the costs used to calculate its reimbursement rates excluded a far more limited set of services. See Gov'ts' SJ Opp'n (dkt. 115) at 4 ("When NEMS was reporting its costs for purposes of setting its reimbursement rate, it narrowly defined 'non-FQHC services' to include only orthodontic and outside laboratory services."). NEMS objected to this argument, particularly as presented in the Governments' supplemental filing in response to the Court's request for unrelated citations to the record. See dkt. 142 (Governments' supplemental filing). NEMS moved to strike the Governments' response or, in the alternative, supplement the record. Dkt. 142.

Based on the parties' cross motions and the record collected through fact discovery, Chief Judge Wilken held that neither party was entitled to summary judgment on the Governments' FCA and CFCA claims. SJ Order at 17. She disregarded the portion of the Governments' supplemental

---

[3] According to NEMS, it "does not contract directly with the State of California as an MCO, [but] stands in a substantially similar posture to an MCO when it is wearing its medical group/MSO hat." NEMS's Opp'n to SJ at 18.

3

1  filing that did not address the requested citations, but denied NEMS's motion to strike because a
2  portion of the Governments' filing properly addressed the Court's request. *Id.* at 26−27. Chief
3  Judge Wilken did not address NEMS's request to supplement the record—because the Court did
4  not rely on the Governments' arguments to which NEMS sought to respond, the request was moot.
5  *See id.*

### B.    Fact and Expert Discovery

The Governments served NEMS with requests for production on May 8, 2013, including a number of broad requests for financial documents and a request for "any and all documents that identify inter-agency transactions between NEMS and NEMS MSO, including checks and financial transfers."[4] Proctor Decl. (dkt. 177) Ex. C; *see* Mot. (dkt. 176) at 2. NEMS responded on June 24, 2013. Proctor Decl. Ex. C. It asserted boilerplate objections as to the breadth, burden, and relevance of each request at issue, but also identified Bates ranges of responsive documents and stated that discovery was ongoing and that NEMS would supplement its responses "as reasonable and appropriate." *Id.* Fact discovery closed on December 3, 2013. *See* Case Management Order (dkt. 51).

Following the close of fact discovery and Chief Judge Wilken's resolution of the parties' motions for summary judgment, the parties stipulated that expert disclosures and reports would be due June 30, 2014, rebuttal expert disclosures and reports would be due July 14, 2014, and expert discovery would close August 14, 2014. Dkt. 149. Chief Judge Wilken adopted this stipulated schedule. Dkt. 150.

The Governments state, and NEMS does not dispute, that the Governments disclosed their expert and served his report on June 30, 2014. Mot. at 4. NEMS did not disclose an expert or file and expert report, but moved to exclude the Governments' expert report on the bases that (1) it failed to adequately identify the documents on which it relied; and (2) it advanced a new theory of

---

[4] The Governments had previously served NEMS with an investigatory subpoena and a civil investigative demand outside the specific context of this litigation. *See* Proctor Decl. Exs. A, B. This Order assumes for the sake of argument that NEMS is correct that its compliance or failure to comply with those requests for documents is irrelevant to the present motion. *See* Opp'n at 4 n.3 (asserting that "the only relevant request for the purposes of the Court's analysis under the federal rules is discovery conducted in this action").

4

fraud that was not adequately pled in the Governments' Complaint—specifically, that NEMS's reimbursement rate at reconciliation was inflated because NEMS reported costs for the same types of services for which it did not report MCO reimbursements. *See generally* NEMS's Mot. to Exclude (dkt. 155). NEMS engaged a rebuttal expert who produced a report dated July 14, 2014. Proctor Decl. Ex. F.[5] NEMS's expert relied on NEMS's cost reports and audited financial statements to conclude that NEMS's reimbursement rate did reflect improper costs. *Id.* at 10. On August 12, 2014, the Governments' counsel deposed NEMS's expert. *Id.* Ex. D. In response to the Governments' counsel's questions, NEMS's expert stated that he did not review bank records and other documents underlying the financial statements on which he had based his opinions. *Id.*

Chief Judge Wilken addressed NEMS's Motion to Exclude on September 2, 2014. She held that the Governments' expert had not advanced a new theory of fraud, but that the Governments needed to provide NEMS with Bates citations for documents referenced in the Governments' expert's report. Order Granting in Part Mot. to Exclude Expert Testimony ("Sept. 2 Order," dkt. 167). That Order set a deadline of seven days for the Governments to provide citations, after which NEMS would have seven days to supplement its expert's report. *Id.* at 7. The Governments provided the citations on September 9, 2014. *See* Proctor Decl. Ex. H.

On September 18, 2014, NEMS sent the Governments a supplemental report by NEMS's expert indicating that he had at that point reviewed various categories of bank records and other documents underlying the financial statements on which he previously relied. *Id.* Ex. I. The Governments received this report on September 19, 2014. Mot. at 4; Opp'n (dkt. 180) at 5. On September 23, 2014, NEMS produced some of these documents to the Governments and indicated that other documents were available for review in a "reading room" at NEMS's office. Proctor Decl. Ex. J (letter from NEMS's counsel to the Governments' counsel). The Governments state, and NEMS does not dispute, that the documents produced number in the thousands, and the reading room contains tens of thousands of new documents. *See* Mot. at 5. The Governments now move to strike this supplemental document production as untimely pursuant to Rule 37(c)(1)

---

[5] The Governments state that this report was produced on July 15, 2014. Mot. at 4.

of the Federal Rules of Civil Procedure. *See generally* Mot.

**III.   ANALYSIS**

    **A.   Chief Judge Wilken's September 2 Order Did Not Authorize NEMS's Supplemental Document Production and Expert Report**

NEMS argues that its supplemental production and expert report were authorized by Chief Judge Wilken's September 2, 2014 Order. *See* Opp'n at 4−5. For several reasons, the Court is not persuaded.

First, NEMS's supplemental expert report was not produced within the timeline that Chief Judge Wilken ordered. Under the terms of the September 2 Order, the Governments had seven days to "produc[e] or identify[] by Bates number the document or documents referred to" in the Governments' expert report. Sept. 2 Order at 6. NEMS could then "supplement its rebuttal expert report" within seven days of being served with the Governments' supplemental information. *Id.* NEMS states that it received the Governments' documents on September 9, 2014 and sent its supplemental report to the Governments on September 18—nine days later. Opp'n at 5. The Governments received the supplemental report on September 19. *Id.* NEMS does not address its failure to meet the seven-day deadline. Instead, after recounting these dates, NEMS inexplicably asserts that it "complied with the timelines set forth in the Court's order."[6] *Id.* This difference of a few days, however, is not the primary issue raised by NEMS's supplemental production.

More importantly, Chief Judge Wilken's Order does not authorize NEMS's large supplemental document production. The portion of the Order allowing NEMS to file a supplemental expert report falls within the section addressing the Governments' previous failure to provide Bates numbers for documents in the Governments' expert report. *See* Sept. 2 Order at 5−6. The intent is plainly to allow NEMS's expert to respond to the documents that were initially identified insufficiently. *See id.* NEMS's supplemental expert report and document production does not address the documents that the Governments identified. Instead, NEMS appears to have

---

[6] The Governments' statement that their receipt of the supplemental report on September 19 was "eleven days" after the Governments provided the Bates citations on September 9 is also erroneous—under Rule 6(a)'s method of computing time, that is a period of ten days—but the Governments are correct that NEMS failed to meet the seven-day deadline. *See* Mot. at 4 & n.3.

sought to counter what it views as a new theory set forth by the Governments' expert.  *See* Opp'n at 7 ("Not until fact discovery closed did NEMS learn that the calculation of its year 2000 per visit rate was at issue.")  Chief Judge Wilken's Order addressed NEMS's argument to this effect *after* the section authorizing a supplemental expert report, and determined that the "Court [wa]s not persuaded" that the Governments' expert had presented a new theory of fraud.  Sept. 2 Order at 7.  It is therefore difficult to construe that Order as authorizing NEMS to produce new documents addressing the purported new theory.

Certainly by the time of the Governments' expert report, NEMS was on notice of the Governments' purported new theory, and should have—and in fact did—address it in NEMS's rebuttal expert report.  *See* Proctor Decl. Ex. F.  Nothing in Chief Judge Wilken's September 2 Order authorized NEMS to *further* buttress its expert's rebuttal arguments in its supplemental report, except to respond to the specific identification of Bates citations by the Government.  NEMS's supplemental expert report does not address those citations.  *See* Proctor Decl. Ex. I.

Finally, even if the September 2 Order arguably does not restrict further expert discovery to issues related to the Governments' supplemental Bates citations, an extension of expert discovery is not an invitation to produce troves of new documents.  NEMS's position elides the distinction between fact discovery and expert discovery.  Although NEMS argues that it is authorized to produce these documents by Chief Judge Wilken's extension of the expert discovery period, it also states in its Opposition that the "ultimate issue of the case comes down to the *factual* dispute" of the basis for NEMS's reimbursement rate, and that the "answer to that question lies in the very documents [at issue]."  Opp'n at 5−6 (emphasis added).  Documents that have a direct bearing on the factual disputes in the case are the subject of fact discovery, which often (as here) concludes before expert discovery so that the parties may rely on a complete factual record to inform their own experts and depose their opponents' experts.  *See Sparton Corp. v. United States*, 77 Fed. Cl. 10, 14−15 (2007) (discussing the distinction between fact and expert discovery).

The outcome might differ if NEMS's expert had located the documents in the course of his analysis, but that is not the case here.  NEMS's expert states that after he completed his initial

1  report, NEMS's counsel advised him that NEMS had recently located the documents, provided the

2  documents to him, and requested that he review them.  Proctor Decl. Ex. I at 1 (Epp Supp'l

3  Report).  A brief extension of expert discovery is not the time for counsel to begin a new

4  investigation of factually relevant documents.

### B. NEMS's Supplemental Document Production Is Barred by Rule 37(c)(1)

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that if a party fails to disclose evidence as required by the Federal Rules, or to timely supplement its disclosure of evidence, it may not rely on that evidence "on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless.  Because NEMS's supplemental document production was not authorized by Chief Judge Wilken's September 2 Order, the relevant questions are whether NEMS had an earlier obligation to produce them and, if the production was untimely, whether NEMS should be barred from relying on them at trial.

#### 1. NEMS's Supplemental Documents Fall Within the Governments' Requests for Production

The Governments argue that NEMS should have provided the documents at issue in response to the Governments' May 8, 2013 requests for production.  *See* Mot. at 2; Reply (dkt. 181) at 1−2; *see also* Proctor Decl. Ex. C.  NEMS addresses one of the Governments' document requests in its Opposition: the request for "Working papers used in cost report preparation."  *See* Opp'n at 7; Proctor Decl. Ex. C at 6 (Request No. 7.d).  NEMS argues that the documents at issue address transactions that were not included in the cost reports, and therefore are not responsive to that request.  Opp'n at 7.  The Governments deride this argument as "hyper-technical," but do not dispute its accuracy.  Reply at 1.

NEMS fails, however, to address the other document requests that apply to the documents at issue.  Several encompass documents that NEMS failed to produce.  For example, Request No. 7.b calls for "General Ledgers and Journals," Proctor Decl. Ex. C at 6, and the supplemental production includes at least four categories of documents that meet that description, *id.* Ex. J (items 1.d, 1.e, 1.i, 2.a, and 2.c).  NEMS's description of the supplemental production also includes documents responsive to Request Nos. 7.c ("Cash Receipts and Disbursement Journals"),

8

7.i ("Billing Records"), 15 ("documents that identify inter-agency transactions between NEMS and NEMS MSO"), 18 ("all bank records for NEMS for the years 2001 to 2010"), 19 ("all bank records for NEMS MSO for the years 2001 to 2010"), and likely others. *See id.* Exs. C, J. Although NEMS objected to each of these requests on the basis of vagueness, breadth, burden, and relevance, it produced documents in response to each of them, and there is no evidence that NEMS ever indicated that it was withholding responsive documents.[7] *See id.* Ex. C. Moreover, NEMS fails to provide any argument as to why its objections were valid, and does not adequately address why—if the objections where legitimate—NEMS should be permitted to produce documents now that were subject to objection during fact discovery. *See generally* Opp'n.

### 2. Rule 26 Required NEMS to Produce Documents Relevant to Its Defenses

Even if some of the documents at issue were not responsive to the Governments' requests for production, NEMS had a separate obligation to disclose documents that it "has in its possession, custody, or control and may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii). NEMS contends that the documents at issue are crucial to its defense. *See* Opp'n at 1–2, 5–6 (describing these documents as "evidence of actual innocence" and "case-dispositive"). The documents therefore constitute evidence NEMS "may use to support its claims or defenses," and fall within the scope of Rule 26(a)(1)(A)(ii). Assuming for the sake of argument that NEMS had adequate reason to omit these documents from its initial disclosure, the question becomes whether NEMS complied with its obligation to supplement that disclosure in a timely manner. *See* Fed. R. Civ. P. 26(e)(1).

### 3. NEMS Has Made No Showing That Its Supplemental Document Production Was Timely

Rule 26(e)(1) required NEMS to "supplement or correct its disclosure or response . . . in a timely manner" upon learning that its Rule 26(a)(1) disclosures or its responses to the Governments' requests for production were "incomplete or incorrect." Fed. R. Civ. P. 26(e)(1).

---

[7] Because there was no reason for the Governments to believe NEMS was withholding documents, the fact that the "Governments did not challenge NEMS' objections to the requests [for production]" is not a convincing reason to excuse NEMS's failure to produce the documents at issue here. *See* Opp'n at 7.

1        NEMS states that its disclosure was timely because NEMS was "unable to obtain copies of
2   [certain] bank statements until September 10, 2014," and provides email correspondence
3   indicating that the statements were transmitted on that date, but provides no explanation of what
4   efforts it took to obtain the bank statements or even when it requested them from the bank.  *See*
5   Opp'n at 5; Bacon Decl. (dkt. 180-1) ¶ 5 & Ex. C.  That some of these documents were held by
6   NEMS's bank is immaterial—courts have routinely held that such documents are within a party's
7   "control" for the purpose of Rule 26.  *See, e.g.*, *Valdez v. Travelers Indem. Co. of Conn.*, No.
8   12-04307-SBA (KAW), 2013 WL 3989583, at *9 (N.D. Cal. Aug. 2, 2013); *Mas v. Cumulus
9   Media Inc.*, No. C-10-1396 EMC, 2010 WL 4916402, at *2 (N.D. Cal. Nov. 22, 2010).  Without
10  any indication that NEMS requested the statements in a timely manner and was unable to obtain
11  them, the Court is unable to conclude that the documents were outside of NEMS's control or that
12  NEMS's production was timely.
13       Further, the bank statements transmitted on September 10 do not appear to account for all
14  of the documents in the supplemental production.  Several categories of documents disclosed by
15  NEMS are not bank statements, *see* Proctor Decl. Ex. J, and NEMS's expert stated in his
16  supplemental report that NEMS's counsel had "recently located" the new documents as of
17  September 5, 2014—five days before NEMS received the statements from the bank, *see id.* Ex. I
18  at 1.  NEMS offers no explanation why it could not have produced the non-bank statement
19  documents earlier.  *See generally* Opp'n.
20       NEMS also states that it was not aware that the 2000 financial records underlying its
21  reimbursement rate were at issue "until after fact discovery."  Opp'n at 7.  This position
22  contradicts NEMS's earlier statement, in its Motion to Exclude Expert Testimony, that "the
23  Governments first raised the notion that NEMS's cost report for fiscal year 2000 included all costs
24  associated with its SFHP contract" in the Governments' opposition to NEMS's motion for
25  summary judgment.  Motion to Exclude (dkt. 155) at 3 (citing Gov'ts' SJ Opp'n (dkt. 115)).  The
26  Governments' opposition was filed on November 14, 2013—before fact discovery closed on
27  December 3, 2013.
28       At the very least, NEMS was aware that the Governments believed the 2000 cost report

was at issue no later than March 19, 2014, when NEMS sought leave to introduce a supplemental declaration addressing this issue for the purpose of summary judgment. *See* dkt. 143. Although NEMS was not granted to leave to supplement the summary judgment record, its desire to do so demonstrates its recognition at that point that such evidence could be relevant to its defense—thus triggering an obligation to supplement its disclosure to the Governments pursuant to Rules 26(e)(1) and 26(a)(1)(A)(ii) if NEMS wished to be able to use such evidence at trial. NEMS has provided no explanation of why it failed to do so. The Court therefore concludes that NEMS failed to timely supplement its disclosures pursuant to Rule 26(e)(1).

### 4. Relevant Factors Favor Striking NEMS's Supplemental Production and Expert Report Pursuant to Rule 37(c)(1)

Rule 34 required NEMS to produce documents responsive to the Governments' requests for production, Rule 26(a)(1) required NEMS to produce or disclose documents relevant to its defenses, and Rule 26(e)(1) required NEMS to supplement its production and/or disclosure in a timely manner if it later learned that it was incomplete. NEMS failed to do so. "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)). Judge Chen has summarized the application of Rule 37(c)(1) as follows:

> A party who fails to make the required initial disclosure "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial," except where the failure to comply was "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1); *Hoffman v. Constr. Protective Serv., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008). In determining whether to preclude introduction of evidence pursuant to FRCP 37, courts consider "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence, and (5) the nondisclosing party's explanation for [its] failure to disclose the evidence." *Dey, L.P v. Ivax Pharm., Inc.*, 233 F.R.D. 567, 571 (C.D. Cal. 2005) (citing *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592 (4th Cir. 2003)).

*S.F. Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 733 (N.D. Cal. 2011). In this case, the factors do not demonstrate that NEMS was substantially justified in failing to earlier disclose

11

the documents at issue, or that such failure was harmless.

### a. Factor 1: Surprise

The surprise to the Governments is significant. The Governments believed that NEMS had produced all documents responsive to the relevant requests for production, *see* Mot. at 6, and presumably believed NEMS had complied with its Rule 26(a)(1) obligation to produce documents relevant to its defense. NEMS had also submitted an expert report addressing issues related to these documents without suggesting that NEMS had access to additional documents beyond the cost report and audited financial statements on which its expert initially relied. *See* Proctor Decl. Ex. F (Epp Initial Report). This factor weighs in favor of exclusion.

### b. Factors 2 and 3: Ability to Cure and Disruption of Trial

The second and third factors are interrelated. The Court could cure the surprise to some extent by granting the Governments additional time review the newly produced documents, conduct additional fact discovery (including re-noticing their 30(b)(6) deposition) if warranted, prepare a new expert report, re-notice the deposition of NEMS's expert, and perhaps file a new dispositive motion. These curative measures would, however, result in a significant disruption of the planned trial date, even beyond the already-issued continuance to February 2. Alternatively, the Court could move forward as scheduled to minimize disruption of trial, but doing so would allow insufficient time for the Governments to cure the effects of NEMS's untimely disclosure. These factors also weigh in favor of exclusion.

### c. Factor 4: Importance of the Evidence

The fourth factor, importance of the evidence, is difficult to evaluate. As discussed further below, the Court does not agree with NEMS that the evidence is dispositive. NEMS assertion that "grant[ing] the Governments' motion would be tantamount to excluding evidence of actual innocence in a criminal proceeding," Opp'n at 2, is also misplaced—this is not a criminal proceeding. The new evidence may be significant, but there was already evidence available that led NEMS's expert to the same conclusion. *See* Proctor Decl. Exs. F, I. Further, "this factor must be viewed from the perspective of both parties: the fact that [the evidence] might have been helpful to [NEMS's] case in the eyes of the jury also points out why it should have been disclosed

in a timely manner." *S. States Rack & Fixture*, 318 F.3d at 598−99 (quoting and affirming the district court's opinion; internal quotation marks omitted). This factor may weigh against exclusion, but it is not so clear as to override the other factors.

### d. Factor 5: Explanation for Failure to Disclose

Finally, the fifth factor strongly favors exclusion. As discussed above, NEMS has offered no credible explanation why it failed to produce documents responsive to the Governments' requests for production. As for its Rule 26(a)(1) obligations, NEMS should have known that issues related to these documents were relevant to its defense significantly earlier in the case. NEMS explanation for its failure to disclose the documents earlier is inadequate.

\* \* \*

Taking the five factors together, NEMS has not demonstrated that its failure to disclose the documents "was substantially justified or is harmless." *See* Fed. R. Civ. P. 37(c)(1). Rule 37 therefore operates to prevent NEMS from using the supplemental evidence "on a motion, at a hearing, or at trial." *See id.* Accordingly, the Governments' Motion to Strike is GRANTED.

### 5. NEMS's Proposed Alternative Standard of Review Is Not Applicable

The standard applied above is more appropriate here than the test NEMS offers, from the Ninth Circuit's decision in *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990). *See* Opp'n at 6. Although NEMS presents *Wanderer* as the Ninth Circuit's test "when the exclusion of certain evidence has a dispositive outcome on the case," Opp'n at 6, that is not how the Ninth Circuit applied it in that case. In *Wanderer*, the issue was "whether a *dismissal of default* is appropriate as a Rule 37 sanction," not whether evidence should be excluded. *Wanderer*, 910 F.2d at 656 (emphasis added); *see also Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) (citing the same test as appropriate when considering a "terminating sanction, whether default judgment against a defendant or dismissal of a plaintiff's action"); *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987) (applying the same test to determine "whether to *dismiss a case* for failure to comply with a court order" (emphasis added)). NEMS cites no authority applying the *Wanderer* test where a party is concerned that the exclusion of its evidence could be important, as opposed cases dealing with sanctions that directly dispose of

13

a case.

Even if *Wanderer* did apply to Rule 37 sanctions that are *de facto* dispositive, the Court is not persuaded that this case presents such a scenario. Before any of the evidence at issue came to light, Chief Judge Wilken denied the Governments' motion for summary judgment on the basis that NEMS had made a showing sufficient "to support an inference that it did not knowingly report false information to DHCS on its reconciliation requests." SJ Order at 17. NEMS's expert was also able to reach the same conclusions before reviewing the evidence at issue—using the "common and accepted practice" of "[r]elying on the work of other auditors"—as he reached after reviewing it. Proctor Decl. Ex. I at 4 (Epp Supp'l Report); *see generally* Proctor Decl. Ex. F (Epp Initial Report). Although it is possible that a factfinder could find the lack of underlying documents significant, NEMS has made no showing that the absence of this evidence would be dispositive.

### C. NEMS's Supplemental Expert Report Is Barred by Rule 37(c)(1)

NEMS's September 18 supplemental expert report, Proctor Decl. Ex. I, must also be stricken. Rule 37(c)(1) prohibits a party from using "information" that it has failed to timely provide. This supplemental report consists entirely of the expert's analysis of the newly produced documents—documents that the Court has now determined are barred by Rule 37(c)(1). *See* Opp'n at 4 (describing the supplemental report as "[t]he result of" the expert reviewing the additional documents). The report is therefore an effort to "use that information . . . at trial," and is no more permissible than introducing the documents themselves. *See* Fed. R. Civ. P. 37(c)(1).

As previously discussed, the supplemental report does not comply with the intent of Chief Judge Wilken's September 2 Order because it fails to address the citations provided by the Governments and instead examines new evidence unrelated to the Governments' response to the September 2 Order. Thus, with no special dispensation from the Court that might alter the normal operation of the Federal Rules of Civil Procedure, the September 18 supplemental report is impermissible under Rule 37(c)(1).

### IV. CONCLUSION

NEMS failed to timely disclose the documents at issue, and has not demonstrated that

14

failure to be harmless or substantially justified.  Under such circumstances, Rule 37(c)(1) operates to bar NEMS's use of the documents and the supplemental report that relies on them.  The Governments' Motion to Strike is therefore GRANTED.

**IT IS SO ORDERED.**

Dated: December 17, 2014

_____
JOSEPH C. SPERO
United States Magistrate Judge