IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA and
STATE OF CALIFORNIA ex rel. LOI
TRINH and ED TA-CHIANG HSU,

    Plaintiffs,

  v.

NORTHEAST MEDICAL SERVICES, INC.,

    Defendant.
_____/

No. C 10-1904 CW

STANDARD FALSE CLAIMS ACT SETTLEMENT TERMS

NORTHEAST MEDICAL SERVICES, INC.,

    Plaintiff,

  v.

CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES, et al.,

    Defendants.
_____/

No. C 12-2895 CW

The standard False Claims Act (FCA) settlement agreement terms are:

1. Subject to the exceptions in paragraph 3, below, in consideration of the obligations of NEMS in the parties' agreement and conditioned upon NEMS's full payment of the settlement amount, the United States (on behalf of itself, its officers, agents, agencies, and departments) releases NEMS, and its present and former directors, officers, employees and agents, to the extent they acted in their

official capacities, from any civil or administrative monetary claims that the United States has or may have for the civil claims against NEMS arising from false claims to the Medi-Cal program for wraparound or supplemental payments from 2001 through 2008, as specified in the Amended Complaint in Intervention ("Covered Conduct"), including without limitations, claims under the federal FCA, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; and/or the common law theories of payment by mistake, unjust enrichment, or fraud.

2. Subject to the exceptions in paragraph 3, below, in consideration of the obligations of NEMS in the parties' agreement and conditioned upon NEMS's full payment of the settlement amount, California (on behalf of itself, its officers, agents, agencies, and departments) releases NEMS, and its present and former directors, officers, employees, and agents, to the extent they acted in their official capacities, from all civil claims that California has or may have for the Covered Conduct, including, without limitations, claims under the California FCA, Government Code §§ 12650-12656, and/or the common law theories of payment by mistake, unjust enrichment, and fraud.

3. Notwithstanding the releases given in paragraphs 1 and 2, above, or any other term of the parties' agreement, the following claims of the United States and California are specifically reserved and are not released:

   a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code), or under California's Revenue and Taxation Code;

   b. Any criminal liability;

   c. Except as explicitly stated in the parties' agreement, any administrative liability, including mandatory or permissive exclusion from federal or state health care programs;

   d. Any liability to the United States or California (or their agencies) for any conduct other than the Covered Conduct;

   e. Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

   f. Any liability for failure to deliver goods or services due;

   g. Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct;

   h. Any liability based upon obligations created by the parties' agreement.

3

4. Relators and their heirs, successors, attorneys, agents, and assigns shall not object to the parties' agreement and agree and confirm that the parties' agreement is fair, adequate, and reasonable under all circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B) and California Government Code § 12652(e)(2)(B).  Conditioned upon Relators' receipt of their share of the settlement amount, Relators and their heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States and California, their agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action under 31 U.S.C. § 3730, or under California Government Code § 12652, and from any claims to a share of the proceeds of the parties' agreement and/or the Civil Action.

5. NEMS waives and shall not assert any defenses NEMS may have to any criminal prosecution or administrative hearing relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, or under Article I Sections 15 and 24 of the California Constitution, the parties' agreement bars a remedy sought in such criminal prosecution or administrative action.  Nothing in this paragraph or any

4

other provision of the parties' agreement constitutes an agreement by the United States concerning the characterization of the settlement amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

6. NEMS fully and finally releases the United States and California, their agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that NEMS has asserted, could have asserted, or may assert in the future against the United States and California, their agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' and California's investigation and prosecution thereof.

7. NEMS fully and finally releases the Relators and their heirs, successors, attorneys, agents, and assigns, from any claims, damages, allegations, demands, actions or causes of action whatsoever, including attorneys' fees, costs, and expenses of every kind and however denominated, known or unknown, fixed or contingent, in law or in equity, in contract or in tort, under any federal or state statute or regulation, or under common law, that NEMS otherwise would have standing to bring, including, without limitation, any claim that NEMS has asserted, could have asserted, or may assert in the future against Relators,

related to the Covered Conduct and the Relators' investigation and prosecution thereof.

8. The settlement amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medi-Cal contractor (e.g. fiscal intermediary, carrier) or any California payer, related to the Covered Conduct; and NEMS agrees not to resubmit to any Medi-Cal contractor or any California payer any previously denied claims related to the Covered Conduct, and agrees not to appeal any such denials of claims. The settlement amount shall not be decreased as a result of any actions taken as a result of the auditing process established and executed by and with the California Department of Health Care Services.

9. All identifiable costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. section 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. sections 1395-1395hhh and 1396-1396v; and the regulations and official program directives promulgated there-under) incurred by or on behalf of NEMS, its present or former officers, directors, employees, shareholders, and agents in connection with the following shall be "Unallowable Costs" on government contracts and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP):

a. the matters covered by the parties' agreement;

b. the United States' and California's audit(s) and civil investigation(s) of the matters covered by the parties' agreement;

c. NEMS's costs of investigation, defense, and corrective actions undertaken in response to the United States' and California's audit(s) and civil investigation(s) in connection with the matters covered by the parties' agreement (including attorneys' fees);

d. the costs of negotiation and performance of the parties' agreement; and

e. the settlement amount, any payments that NEMS may make to Relator, including costs and attorneys' fees, and any additional payments NEMS may make in connection with the parties' agreement.

10. These Unallowable Costs shall be separately determined and accounted for in non-reimbursable cost centers by NEMS and NEMS shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by NEMS or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

11. If applicable, NEMS shall, within ninety (90) days of the date of this judgment, identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by NEMS, or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs.  NEMS agrees that the United States and California, at a minimum, shall be entitled to recoup from NEMS all remedies including overpayment, plus applicable interest and penalties, to which they may be entitled under the law, as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.  Any payments due after the adjustments have been made shall be paid to the United States, California, and/or the affected agencies, pursuant to the direction of the United States Department of Justice, the California Department of Justice, and/or

the affected agencies.  The United States and California reserve their rights to disagree with any calculations submitted by NEMS, or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on NEMS or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

12. Nothing in the parties' agreement shall constitute a waiver of the rights of the United States or California to audit, examine, or re-examine NEMS's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

13. NEMS warrants that it has reviewed its financial situation and that it currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment of the settlement amount. Further, the parties warrant that, in evaluating whether to execute their agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to defendants, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.  Further the parties warrant that the mutual promises, covenants, and obligations set

forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay or defraud any entity to which NEMS was or became indebted on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

14. The parties' agreement is intended to be for the benefit of the parties only.  The parties do not release any claims against any other person or entity, except to the extent provided for in paragraph 15, below.

15. NEMS waives and shall not seek payment for any of the health care billings covered by the parties' agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

16. Each party freely and voluntarily entered into the parties' agreement without any degree of duress or compulsion.

17. The parties' agreement is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to the parties' agreement is the United States District Court for the Northern District of California.  For purposes of construing the parties' agreement, the agreement is deemed to have been drafted by all parties to the agreement and shall not, therefore, be

construed against any party for that reason in any subsequent dispute.

18. The parties' agreement is binding on NEMS's successors, transferees, heirs, and assigns.

19. The parties' agreement is binding on Relators' successors, transferees, heirs, and assigns.

20. All parties consent to the United States' and/or California's disclosure of the parties' agreement, and information about the parties' agreement, to the public.

Dated: August 17, 2015

CLAUDIA WILKEN
United States District Judge

11