IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF CALIFORNIA ex rel. LOI TRINH and ED TA-CHIANG HSU,<br><br>    Plaintiffs,<br><br>  v.<br><br>NORTHEAST MEDICAL SERVICES, INC.,<br><br>    Defendant.<br>_____/ | No. C 10-1904 CW |
| NORTHEAST MEDICAL SERVICES, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES, et al.,<br><br>    Defendants.<br>_____/ | No. C 12-2895 CW<br><br>ORDER DENYING MOTIONS TO ALTER, VACATE OR SET ASIDE JUDGMENT<br><br>(Docket Nos. 265 & 284 in 10-1904)<br><br>(Docket Nos. 144 & 154 in 12-2895) |

    Northeast Medical Services, Inc. (NEMS), Defendant in case number 10-1904[1] and Plaintiff in case number 12-2895, moves to alter, vacate or set aside both the Court's judgment and accompanying settlement term documents, Docket Nos. 256, 257 and 258, and Magistrate Judge Laurel Beeler's order enforcing the parties' oral settlement agreement on which judgment rests, Docket

---

[1] All docket numbers referenced refer to this case unless otherwise stated.

Nos. 223, 225 and 229. NEMS asserts that such relief is proper under Rule 59(e) and Rule 60(b) and (d) of the Federal Rules of Civil Procedure. For the reasons discussed below, the motions are denied.

## BACKGROUND

United States et al. v. NEMS, No. 10-1904, is a qui tam action that arose out of a dispute concerning NEMS's financial reporting obligations under the Medicaid Act. NEMS filed action No. 12-2895, related to the same dispute, against the United States, the State of California, California's Department of Healthcare Services (DHCS) and its director (collectively, the Governments), seeking declaratory and injunctive relief. The District Court referred the cases to Magistrate Judge Beeler for a settlement conference and, on September 4, 2014, NEMS reached an oral settlement agreement with the Governments and Relators, placed on the record in open court, Docket No. 189-1, Ex. 1, Transcript September 4, 2014, that would result in dismissal of both cases with prejudice, id. at 10.

The relevant terms are as follows. In exchange for dismissal of the case against it, NEMS agreed to pay eight million dollars "plus 2.37 percent interest . . . from September 26, 2014." Id. at 8; Judgment ¶ 1. The settlement was contingent upon "NEMS' resolution of its federal administrative remedies" with the United States Department of Health and Human Services (USDHHS), id. at 8, meaning, "essentially, whether or not the [USDHHS] would require a corporate-integrity agreement," Docket No. 225, Amended Order Enforcing Settlement at 3. NEMS and the DHCS agreed to implement an auditing process to establish governing standards for reporting

purposes.  Id. at 3; Transcript September 4, 2014 at 8-9.  The parties also agreed that Magistrate Judge Beeler would retain jurisdiction over the settlement agreement and that the settlement agreement would be reduced to writing.  Transcript September 4, 2014 at 8, 11.  Finally, the parties agreed that the settlement agreement in the qui tam case "is the standard federal and state False Claims Act[] Settlement agreement."  Id. at 9.  The United States and the State both accepted the settlement agreement subject to the contingency of final supervisory approval.  Id. at 16-17.

The parties were unable to reduce that settlement agreement to writing because NEMS refused to sign the Governments' draft settlement agreement.  Amended Order Enforcing Settlement at 7.

On December 1, 2014, the Governments and the qui tam Relators together filed a motion to enforce the settlement agreement. Docket No. 189.  The declaration of Assistant United States Attorney Melanie Proctor, attached to the motion, stated, "The Governments have obtained the necessary approvals to enter into the settlement agreement that was recorded on September 4, 2014." Docket No. 247 (citing Docket No. 189-1, Proctor Dec.).  NEMS's opposition was based on the USDHHS administrative remedies contingency.  Sometime after Magistrate Judge Beeler had placed the settlement on the record, the federal government had informed NEMS that "so long as it participated in the state audit process set forth in the settlement agreement, it could satisfy the requirements for a corporate integrity agreement" with the USDHHS. Amended Order Enforcing Settlement at 6.  NEMS argued that it did not sign the settlement agreement because the Governments provided

3

only a general outline of the audit proposal that would satisfy the federal administrative remedies contingency. Id. at 7-8. However, NEMS "believed that a completed audit, or at least an agreed-upon audit process . . . was a 'prerequisite' to NEMS's signing the final settlement agreement." Id. at 8 (quoting Docket No. 195, NEMS's Opposition to Motion to Enforce).[2]

The parties consented to having Magistrate Judge Beeler hear and decide the motion to enforce settlement herself, as opposed to making a Report and Recommendation to the Court. At the hearing, Magistrate Judge Beeler stated that the USDHHS administrative remedies contingency "was the only contingency beyond the . . . ordinary contingency of . . . the signoff by the upper echelons on the government side, both state and federal." Docket No. 221, Transcript January 8, 2015 at 10-11. As long as the USDHHS contingency were satisfied, she continued, the agreement would be binding and enforceable. Id. at 11. Magistrate Judge Beeler stated repeatedly that the contingency was satisfied, id. at 14-15, 23, and Assistant United States Attorney Proctor agreed, id. at 14-15. At the end of the hearing, Magistrate Judge Beeler permitted NEMS a few days to convene its Board so it could sign the agreement on its own without her enforcement. Id. at 32-36. NEMS did not sign it. Amended Order Enforcing Settlement at 7.

Magistrate Judge Beeler issued an order enforcing the oral settlement agreement on January 13, 2015. With respect to the

---

[2] Interestingly in light of the current dispute, NEMS distinguished the USDHHS contingency from the "'normal contingency' of the government approval, which occurs only after a final agreement has been signed." NEMS's Opposition to Motion to Enforce at 5 n.2.

USDHHS contingency, she held that "NEMS got what it bargained for: dismissal of the case without a [corporate integrity agreement], with a settlement number in a restitution landscape, and with the litigation insulation of a False Claims Act release." Id. at 17. As she explained, the issue involved in the USDHHS contingency "was only whether [USDHHS} would require, or waive, a corporate-integrity agreement. NEMS wanted waiver, and it got it . . . If NEMS had wanted to include more precise, or different, conditions into the settlement, it should have expressed that desire openly, objectively." Id. at 14. The order also stated that the parties and their counsel had been "present with settlement authority" on September 4, 2014, the date of the oral agreement. Id. at 3. As noted above, the State and the United States had expressly conditioned their acceptance on the "ordinary final supervisory authority that is required" in a settlement agreement with a government entity. Id. at 5. The order explained that "no one disputes that the contingency of approval was satisfied" because, at the January 8, 2015 hearing, the federal and state governments represented that they had the authority to sign the transcripts. Id. at 6.

On January 15, 2015, Magistrate Judge Beeler issued a Report and Recommendation recommending that this Court enter judgment. On the same day, NEMS filed a Notice of Appeal. On June 10, 2015, the Ninth Circuit dismissed the appeal for lack of jurisdiction because there was not yet a final order.

On June 17, 2015, Brian V. Frankel, an attorney for the State, e-filed a letter to Magistrate Judge Beeler with the following text:

> This is to inform you that while NEMS' appeal was pending, and consistent with the parties' settlement agreement, as reflected on the September 4, 2014 hearing transcript, the State of California's Department of Health Care Services obtained "control agency approval" to proceed with implementing the terms of the September 4, 2014 settlement.

Docket No. 244, June 17, 2015 Frankel Letter. The following day, Magistrate Judge Beeler directed the State to file a written explanation regarding what effect, if any, this letter had on the case. Mr. Frankel filed an explanatory letter on July 2, 2015, stating that the January 13 order "included an incorrect reference to the timing of when the State obtained control agency approval." Docket No. 246, July 2, 2015 Frankel Letter. Mr. Frankel explained that his June 17 letter "was a courtesy to advise the Court and parties of the completion of that anticipated event." Id. Mr. Frankel stated that the timing of the State's control agency approval had no effect on the enforceability of the agreement. Id.

The Governments explain the sequence of events resulting in the June 17, 2015 letter as follows. In December 2014, when the Governments and Relators moved to enforce the settlement agreement, the United States had authority to settle and understood that the State also had that authority. Docket No. 268-1, Proctor Dec. ¶ 2. The State attorneys had authorized Assistant United States Attorney Proctor to affix their electronic signatures to the motion to enforce settlement. Proctor Dec. ¶ 4. The State reviewed Assistant United States Attorney Proctor's declaration in support of the motion to enforce indicating that the supervisory approvals had been obtained and, through an oversight, agreed to its filing.

6

NEMS's counsel filed several letters in response to Mr. Frankel's letters. In particular, NEMS's counsel requested that Magistrate Judge Beeler "direct the governments to produce the bases for their representations" in the motion to enforce the settlement agreement and supporting declarations and to produce "documents and communications that show when, as to what, and from whom the approval was sought." Docket No. 247, July 7, 2015 Feldesman Letter; see also Docket No. 249, July 25, 2015 Feldesman Letter. Magistrate Judge Beeler issued no such directive and, on August 6, 2015, NEMS's counsel filed another letter requesting that she issue a directive or state why she did not issue a directive. Docket No. 253, August 6, 2015 Feldesman Letter.

On July 22, 2015, Magistrate Judge Beeler scheduled a conference call for July 29, 2015, to discuss the letters the parties had filed. She later rescheduled the conference call, and on August 10, 2015, vacated the scheduled conference call. This Court reviewed the record de novo, including the above-described letters, concluded that the cases were ripe for entry of judgment and entered judgment.

On September 9, 2015, NEMS filed a motion to alter the judgment or in the alternative to set aside the judgment or in the alternative to vacate the order granting the motion to enforce the settlement and the judgment. Docket No. 265. The Governments, DHCS's director and Relators filed timely responses. NEMS filed its reply brief on September 30, 2015. While this motion was pending, NEMS filed another Rule 60(b) and (d) motion on December 23, 2015. Docket No. 284. The parties have filed timely

7

responses and replies.  The Court rules on both motions in this order.

## LEGAL STANDARDS

Rule 59(e) of the Federal Rules of Civil Procedure permits a party to move to alter or amend a judgment no later than twenty-eight days after the entry of judgment.  Amending a judgment after entry is "an extraordinary remedy which should be used sparingly." Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011). Rule 59(e) amendments are appropriate if the district court is presented with newly discovered evidence or committed clear error or the initial decision was manifestly unjust.  In re Syncor ERISA Litig., 516 F.3d 1095, 1100 (9th Cir. 2008).

Rule 60(b) allows a party to seek relief from a "final judgment, order, or proceeding" when one of the following is shown: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged . . .; or (6) any other reason that justifies relief."  Fed. R. Civ. P. 60(b).  Rule 60(b) motions are not a substitute for appeal or a means of attacking some perceived error of the court.  See Twentieth Century-Fox Film Corp. v. Dunnahoo, 637 F.2d 1338, 1341-42 (9th Cir. 1981).

Rule 60(d) states that the "rule does not limit a court's power to: . . . (3) set aside judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3).  A court's inherent power to vacate or

amend a judgment obtained by fraud on the court is narrowly construed, "applying only to fraud that defiles the court or is perpetrated by officers of the court." United States v. Chapman, 642 F.3d 1236, 1240 (9th Cir. 2011).

DISCUSSION

I. The Judgment

A. Rule 59(e)

NEMS argues that the judgment should be altered or amended under Rule 59(e)(1) based on newly discovered evidence. However, the letters indicating that the State had belatedly obtained control agency approval to implement the settlement were filed with the Court in June and July of 2015, well before judgment was entered in August. Thus, NEMS's argument that the judgment should be altered or amended under Rule 59(e)(1) is unavailing.

NEMS is also not entitled to relief under Rule 59(e)(2)[3] because the judgment was neither clearly erroneous nor manifestly unjust. The Court agrees with the State that the contingency of "governmental supervisory approval was a fully disclosed and bargained-for term . . . which was ultimately satisfied." Docket No. 267, State Response Br. at 3. Further, NEMS's argument that the settlement terms relating to obtaining supervisory approval were not fully explained is unavailing. See Docket No. 272, Reply Br. at 4-5. If NEMS wanted more details regarding the supervisory approval needed or how long it would take, it should have inquired

---

[3] The Court addresses Rule 59(e)(2) even though it is not clear from NEMS's briefing whether NEMS believes it is entitled to relief under this subsection.

9

before orally agreeing to the settlement as it stood on September 4, 2014.

B. Rule 60(b)

NEMS requests relief under Rule 60(b)(2), which relates to reconsideration based on newly discovered evidence. "Relief from judgment on the basis of newly discovered evidence is warranted if (1) the moving party can show the evidence relied on in fact constitutes 'newly discovered evidence' within the meaning of Rule 60(b); (2) the moving party exercised due diligence to discover this evidence; and (3) the newly discovered evidence must be of 'such magnitude that production of it earlier would have been likely to change the disposition of the case.'" Feature Realty, Inc. v. City of Spokane, 331 F.3d 1082, 1093 (9th Cir. 2003) (quoting Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., Inc., 833 F.2d 208, 211 (9th Cir. 1987)).

As with Rule 59(e), evidence is not newly discovered if the moving party was in possession of the evidence before judgment was rendered. See id. Evidence that the State obtained control agency approval in June 2015 was before the parties and the Court before judgment was entered. Thus, NEMS is not entitled to relief under Rule 60(b)(2).

NEMS also argues for relief based on purported fraud. Under Rule 60(b)(3), the movant must (1) prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct; and (2) establish that the conduct complained of prevented the losing party from fully and fairly presenting its case or defense. Casey v. Albertson's Inc., 362 F.3d 1254, 1260 (9th Cir. 2004); Jones v. Aero/Chem Corp., 921

10

F.2d 875, 878-79 (9th Cir. 1990). Rule 60(b)(3) "require[s] that fraud . . . not be discoverable by due diligence before or during the proceedings." Casey, 362 F.3d at 1260 (brackets and ellipsis in original). Rule 60(b)(3) "is aimed at judgments which were unfairly obtained, not at those which are factually incorrect." In re M/V Peacock, 809 F.2d 1403, 1405 (9th Cir. 1987).

NEMS is not entitled to relief under Rule 60(b)(3) because it has not established that the premature representation, on December 1, 2014, that the State already had supervisory approval prevented NEMS from fully and fairly presenting its case or defense. See Casey, 362 F.3d at 1260. NEMS has not satisfied its burden to demonstrate what the premature representation of supervisory approval prevented it from presenting. Further, NEMS does not present any evidence of fraud. It appears that the premature representation that final approval had been obtained was an unintentional error, as was the delay in obtaining the approval.

C. Rule 60(d)

For similar reasons, NEMS is not entitled to relief under Rule 60(d). Fraud on the court occurs when "the fraud rises to the level of an unconscionable plan or scheme which is designed to improperly influence the court in its decision." Chapman, 642 F.3d at 1240 (internal quotation marks omitted). The proponent must demonstrate "by clear and convincing evidence" that such fraud occurred. United States v. Estate of Stonehill, 660 F.3d 415, 445 (9th Cir. 2011). NEMS did not meet its burden here; instead, it has fastened on the apparently inadvertent and immaterial delay in obtaining the State's supervisory approval to implement the settlement.

11

D. Objections to the Judgment's Terms

In addition to its motions to set aside the judgment altogether, NEMS raises two objections to the judgment's terms.

First, NEMS argues that the judgment's description of the contemplated state auditing process differs from the descriptions in both the September 4, 2014 transcript and Magistrate Judge Beeler's January 13, 2015 order enforcing the settlement. The judgment states that "NEMS shall participate in an auditing process established and executed by and with the California Department of Health Care Services." Docket No. 256 ¶ 2. The September 4, 2014 transcript states that NEMS and DHCS have "agreed to the condition that they will have . . . an auditing process to include auditors for both sides to establish the governing standards on how NEMS reports revenue for wraparound purposes for open and future years." Transcript September 4, 2014 at 8. Magistrate Judge Beeler's January 13, 2015 order enforcing the settlement agreement states that "NEMS and the California Department of Health Care Services . . . agreed to implement an auditing process, including auditors for both sides, to establish governing standards on how NEMS reports revenue for wraparound purposes for open and future years." Amended Order Enforcing Settlement at 3 (citing the September 4, 2014 transcript).

Second, NEMS objects to the Court's statement of the Standard False Claims Act Settlement Terms, Docket No. 257, which the Court incorporated into the judgment. As noted above, the parties had agreed orally on the record on September 4, 2014, that their settlement would "be a standard False Claims Act settlement agreement." Amended Order Enforcing Settlement at 4; see also

12

Transcript September 4, 2014 at 9. NEMS now argues that there are no standard False Claims Act settlement terms, and that the Standard False Claims Act Settlement Terms incorporated into the judgment differ both from the version of the terms the Governments filed with their motion to enforce and from a settlement agreement NEMS had executed in an earlier case.

The Court gave NEMS an opportunity to submit supplemental briefing regarding these objections, to explain the "exact changes it requests that the Court make to these documents to address 'the discrepancies'" and "the basis for its requests." Order for Additional Briefing. In response, NEMS provides neither. See Docket No. 279, NEMS's Additional Briefing; Docket No. 282, NEMS's Additional Reply. Instead, NEMS states repeatedly that the only appropriate recourse is to set aside or vacate the judgment and Magistrate Judge Beeler's order. The Court finds NEMS's arguments unpersuasive. Whatever differences may exist among the transcript, Magistrate Judge Beeler's order and the judgment with regard to the auditing process do not constitute clear error. Further, the Court agrees with Magistrate Judge Beeler that "the 10-1904 settlement requires only implementing and engaging in the audit process, not resolving it." Amended Order Enforcing Settlement at 18. Likewise, because, when given the opportunity, NEMS did not identify any Standard False Claims Act Settlement Terms it considers inconsistent with its understanding of the standard terms, any differences that may exist do not constitute clear error.

//

//

II. Order Enforcing the Settlement Agreement

Analysis under Rule 60(b)(2) is different with respect to the January 13, 2015 order enforcing the settlement agreement. First, that the State did not obtain control agency authority to implement the settlement agreement until June 2015 was "newly discovered evidence" with respect to the order. Second, NEMS did not fail to exercise diligence to discover the filed letter announcing authority sooner, as the letter was only available once filed. The Governments had represented that both had supervisory approval as of the January 8, 2015 hearing on the motion to enforce the settlement.

However, NEMS falls short on the third prong; this newly discovered evidence was not of "such magnitude that production of it earlier would have been likely to change the disposition of the case." Feature Realty, 331 F.3d at 1093. Even if Magistrate Judge Beeler would not have granted the motion on January 13, 2015 if the State had not yet obtained final supervisory approval, the State ultimately did obtain such approval. Had Magistrate Judge Beeler been aware that the State had not yet obtained final approval, she might, at most, have waited to grant the order to enforce the settlement agreement until it did, which would not have altered the disposition. She would not have denied the Governments' motion to enforce the settlement agreement based on the State's delay in obtaining final implementing approval, particularly because it was the State, as well as the United States, that wished to enforce the settlement, over NEMS's objections, which had nothing to do with the State's authority.

14

NEMS also argues that it would not have agreed on September 4, 2014 to a September 26, 2014 payment date "had it had any idea that the State's supervisory approval was the responsibility of a still unknown 'control agency' whose processes, by all appearances, . . . would take five months to complete." Docket No. 265, Opening Br. at 10. NEMS, however, did not seek that information when it agreed to the settlement in September, nor did it pay by that date. Indeed, it had not paid as of May 13, 2015, when the Court approved a supersedeas bond pending NEMS's appeal. September 26 was not the payment date, but the date from which interest would begin to accrue. Transcript September 4, 2014 at 8; Amended Order Enforcing Settlement at 3.

NEMS argues that, without the State's final supervisory approval, the State was not entitled to file the motion to enforce the settlement agreement at all. However, the United States and Relators also filed the motion. Had the parties known that the State had not yet obtained control agency approval, the State would have filed the motion once the State did obtain the final approval, with the same result.

NEMS argues in its second Rule 60 motion that, because it did not know that the State had not yet obtained control agency approval, its consent to Magistrate Judge Beeler's jurisdiction over the motion to enforce the settlement was neither knowing nor voluntary. Docket Nos. 284 and 289. NEMS cites no legal authority suggesting that any misunderstanding regarding final supervisory approval relates to the knowing-and-voluntary

15

requirement.[4] Further, this is the first time NEMS has made this argument, even though it consented to Magistrate Judge Beeler's jurisdiction over a year ago and received Mr. Frankel's letter over six months ago. Finally, that NEMS was unaware that the State had not yet obtained control agency approval to implement the settlement does not constitute the "extraordinary circumstances" required to vacate consent to a magistrate judge. See 28 U.S.C. § 636(c)(4). The Court finds NEMS's argument unpersuasive.[5]

In addition, the Court has reviewed de novo Magistrate Judge Beeler's order enforcing the settlement agreement and concludes that her determination that the settlement must be enforced is correct.

It appears that NEMS has thought the better of its agreement to settle and is grasping at straws seeking to undo it.

//
//
//

---

[4] Indeed, the Ninth Circuit and the Supreme Court have discussed this requirement in the context of constitutional, rather than factual, concerns. See Roell v. Withrow, 538 U.S. 580, 595 (2003) (explaining that the express consent requirement for magistrate judge jurisdiction "ensures that the parties knowingly and voluntarily waive their right to an Article III judge"); Anderson v. Woodcreek Venture Ltd., 351 F.3d 911, 914-15 (9th Cir. 2003) (explaining that the knowing-and-voluntary-consent requirement "was designed to assuage constitutional concerns, as Congress did not want to erode a litigant's right to insist on a trial before an Article III judge").

[5] Because this argument fails on its merits, the Court need not discuss procedural arguments for denying the motion. See Docket No. 287 at 2.

CONCLUSION

For all the foregoing reasons, NEMS's motions for relief under Rules 59 or 60 (Case No. 10-1904, Docket Nos. 265 and 284; Case No. 12-2895, Docket Nos. 144 and 154) are DENIED.

IT IS SO ORDERED.

Dated: February 17, 2016

CLAUDIA WILKEN
United States District Judge